MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2026 ME 68
Docket:        Ken-25-281
Argued:        February 4, 2026
Decided:       July 23, 2026

Panel:         STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, and DOUGLAS, JJ.

STATE OF MAINE

v.

KENNETH D. MARIN

LAWRENCE, J.

[¶1]  Kenneth D. Marin appeals from a judgment of conviction of three counts of gross sexual assault, two counts of unlawful sexual contact, two counts of unlawful sexual touching, and one count of tampering with a witness or informant, entered by the trial court (Kennebec County, *Daniel Mitchell, J.*) after a jury trial.  Marin argues that the court abused its discretion by admitting in evidence a photograph found on Marin's computer depicting a noncriminal sexual act.  Marin argues that the photograph was irrelevant, unfairly prejudicial, and constituted inadmissible character evidence.  Marin also contends that the court erred by admitting testimony regarding uncharged conduct that occurred outside of Maine.  We conclude that the court did not err or abuse its discretion in admitting the photograph and that Marin waived any

2

argument as to the uncharged conduct occurring outside of Maine. We therefore affirm the judgment of conviction.

## I. BACKGROUND

[¶2]  Viewing the evidence in the light most favorable to the verdict, the jury could have found the following facts beyond a reasonable doubt. *See State v. Hunt*, 2023 ME 26, ¶ 2, 293 A.3d 423.

[¶3]  Marin lived with his grandson—who was around the same age as the victim—in the basement of a house Marin was building in Augusta. Marin was friends with the victim's mother, who considered Marin as a father figure because her biological father had not been a big part of her life. In 2012, when the victim was around six years old, she began spending time with Marin and his grandson, including sleeping over many times at Marin's house and going on trips in Marin's camper van. The victim referred to Marin as "Opa," the German term for "grandfather," and Marin viewed the victim as a granddaughter. Between September 8, 2012, and November 1, 2018, Marin sexually abused the victim, primarily at his home. The sexual abuse ended in 2018 when the victim stopped going to Marin's home after she told her mother what Marin had been doing to her over the six-year period.

[¶4]  Law enforcement began an investigation shortly after that.  Marin's grandson, who was twelve years old when he was first interviewed in 2019, initially did not confirm the victim's allegations, denying that he saw anything happen between the victim and Marin.  Two years later, however, in 2021, the grandson disclosed that his previous statements were all untrue and that he had seen Marin engage in inappropriate behavior with the victim numerous times and that Marin coached him, using fear and pressure, on how to respond during his 2019 interview.

[¶5]  By an indictment in 2021 and a superseding indictment in 2024, after the grandson's disclosures, the State charged Marin with the following crimes:

- Count 1: Gross sexual assault (Class A), 17-A M.R.S. § 253(1)(C) (2026);

- Count 2: Unlawful sexual contact (Class B), 17-A M.R.S. § 255-A(1)(E-1) (2026);

- Count 3: Unlawful sexual touching (Class D), 17-A M.R.S. § 260(1)(C) (2026);

- Count 4: Gross sexual assault (Class A), 17-A M.R.S. § 253(1)(C);

- Count 5: Gross sexual assault (Class A), 17-A M.R.S. § 253(1)(C);

- Count 6: Unlawful sexual contact (Class B), 17-A M.R.S. § 255-A(1)(E-1);

- Count 7: Unlawful sexual touching (Class D), 17-A M.R.S. § 260(1)(C);

- Count 8: Tampering with a witness or informant (Class C), 17-A M.R.S. § 454(1)(A)(1), (2) (2026);

- Count 9: Possession of sexually explicit materials (Class C), 17-A M.R.S. § 284(1)(C) (2026);

- Count 10: Possession of sexually explicit materials (Class C), 17-A M.R.S. § 284(1)(C);

- Count 11: Possession of sexually explicit materials (Class C), 17-A M.R.S. § 284(1)(C); and

- Count 12: Possession of sexually explicit materials (Class C), 17-A M.R.S. § 284(1)(C).[1]

Marin pleaded not guilty to all twelve counts.

[¶6]  On January 7, 2025, the State filed a motion in limine to seek admission of evidence of uncharged conduct in which the victim alleged incidents of unlawful sexual touching in Marin's camper van that occurred in Massachusetts and potentially other unknown locations.  Marin did not respond to this motion, and the court did not rule on this motion until trial.

[¶7] On February 6, 2025, the State filed a motion in limine to admit two pornographic images recovered from Marin's computer.  The State acknowledged that the images did not depict criminal conduct on the part of Marin but instead argued that they showcased Marin's motive and intent as to

---

[1] Marin was indicted on September 24, 2021, on all of the listed counts other than Count 8.  The superseding indictment added Count 8 and renumbered Counts 8 to 11 of the original indictment.

the charged sexual-abuse acts. Both images depicted sexual acts between a young female and an older male with captions that indicated that they were relatives. Specifically, one image had the caption "Oh, Grandpa!" and the State argued that the image was relevant to Marin's attraction to the victim and the conduct he engaged in with her because Marin and the victim had a grandfather-granddaughter-like relationship, though not a biological relationship.

[¶8] The court held a hearing on this motion on the same day. At the hearing, the State amended its motion to add the four images that form the basis of the charges of possession of sexually explicit materials, Counts 9 through 12. Intertwined with the State's motion was Marin's motion for relief from prejudicial joinder and his request to sever the charges of possession of sexually explicit materials (Counts 9-12) from the sexual-abuse charges (Counts 1-8). The State wished to ensure that should the court sever the counts, it could introduce the four images from the charges of possession of sexually explicit materials at the trial on the sexual-abuse charges.

[¶9] The court granted Marin's motion to sever the counts, setting Counts 9 through 12 for a second trial at a later date. As a result, the court denied in part and granted in part the State's motion to introduce the six

pornographic images. The court denied admission of one of the pornographic images portraying a familial relationship between the persons depicted because the familial relationship involved a father and daughter and was not specific enough to the "unique allegations" in this case. The court excluded the four images that would be used in the trial on the charges of possession of sexually explicit materials because they were also "not specific enough to issues around motive and intent," they would likely be used as propensity evidence, and they were discovered on Marin's computer at a time too far removed from the allegations of sexual abuse to be relevant. However, the court granted the motion to admit the noncriminal pornographic image with the caption "Oh, Grandpa!" because the State had a substantial purpose in offering the image to prove motive and intent given that the image depicted a relationship similar to the grandfather-granddaughter-like relationship between Marin and the victim that the State alleged.

[¶10] The court held a jury trial on the conduct charged in Counts 1 through 8 from February 24 to 27, 2025. On the first day of trial, the court ruled on the State's January 7, 2025, motion to admit evidence of uncharged conduct, granting the motion under the condition that the evidence would not be offered as character evidence and that the court would instruct the jury to not consider

the evidence of uncharged conduct as propensity evidence.[2]  When the court asked Marin's counsel if he had any argument to the contrary, counsel stated, "I'm not objecting."

[¶11]  The jury found Marin guilty of Counts 1 through 8.  The court sentenced Marin on May 23, 2025.  On Count 1, gross sexual assault, the court sentenced Marin to twenty-five years of imprisonment and supervised release for life with conditions.  The court imposed carceral sentences on the other counts to be served concurrently to Count 1.  Marin's trial on Counts 9 through 12 has not yet occurred.

[¶12]  Marin timely appealed on June 6, 2025.  M.R. App. P. 2B(b)(1).

## II.  DISCUSSION

### A.    Admission of the Photograph

[¶13]  Marin argues that the court erred and abused its discretion in admitting the photograph captioned "Oh, Grandpa!" as Exhibit 9.[3]  Marin asserts

---

[2]  The court later discussed the potential jury instruction with the parties, and the parties agreed that the court should not give an instruction on this matter to the jury because it would potentially confuse the jury about propensity evidence.  Instead, with Marin's agreement, the court instructed the jury that in order to find Marin guilty, the jury must find that the charged events occurred in Kennebec County, Maine.

[3]  Marin also argues that State's Exhibits 8A, 8B, and 8C, which are pictures of the minicomputer and the hard drive on which Exhibit 9 was found, should not have been admitted for the same reasons.  Marin objected to their admission at trial and therefore preserves this argument on appeal.  The State appeared to offer those three images to lay the foundation for finding Exhibit 9 in Marin's possession.  *See* M.R. Evid. 901(a).  As these exhibits were relevant to establish the foundation for Exhibit 9, we focus our discussion on Exhibit 9 alone.  *See id*.

that Exhibit 9 is not relevant under Maine Rule of Evidence 401. Specifically, he contends that it is not linked in time to when the alleged crimes occurred, it did not depict any of the parties involved, it was not essential to establishing the events of the alleged crimes, and the connection regarding a sexual grandparent-grandchild relationship was not relevant to the crimes charged. Marin also contends that the court should have excluded Exhibit 9 under Maine Rule of Evidence 404(b) as improper character evidence because it was used to show Marin's particular behavior on one occasion to assert that he acted in accordance with that behavior in a case in which motive and intent were not at issue for the central charges.

[¶14] Finally, he argues that the court should have excluded Exhibit 9 under Maine Rule of Evidence 403 because the prejudicial effect of showing the jury the image substantially outweighed the probative value of the image. He asserts that it encouraged the jury to have an emotional reaction to the evidence and did little to aid in the evaluation of the testimony.

### 1. Rule 401 and Rule 404(b)

[¶15] We review the court's decision whether to exclude evidence pursuant to Rule 404(b) for clear error. *See State v. Williams*, 2024 ME 37, ¶ 28, 315 A.3d 714. "Evidence of a crime, wrong, or other act is not admissible to

prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." M.R. Evid. 404(b). However, if relevant, such evidence is admissible for limited purposes other than to prove propensity, such as to prove motive, intent, or the relationship of the parties. *State v. Pratt*, 2015 ME 167, ¶ 24, 130 A.3d 381.

[¶16]  We review relevance under Rule 401 for clear error. *State v. Hassan*, 2013 ME 98, ¶ 21, 82 A.3d 86. "Evidence is relevant if[] (a) It has any tendency to make a fact more or less probable than it would be without the evidence; and (b) The fact is of consequence in determining the action." M.R. Evid. 401.

[¶17]  Exhibit 9 makes the fact that Marin had motive or intent to commit the charged offenses more probable than it would be without Exhibit 9. *See Hassan*, 2013 ME 98, ¶ 21, 82 A.3d 86 (holding that "[e]vidence of events occurring after an alleged criminal act is generally relevant if it tends to establish the defendant's state of mind" (quotation marks omitted)). Exhibit 9, which was found on Marin's computer, depicts a sexual act, similar to the charged offenses, between two parties with a grandfather-granddaughter-like relationship—also similar to the relationship that Marin had with the victim.

[¶18]  Marin argues that intent was not at issue in this case because gross sexual assault does not have a mens rea requirement.  While Marin is correct that gross sexual assault does not require proof of intent, 17-A M.R.S. § 253(1)(C), *see State v. Proia*, 2017 ME 169, ¶ 11 n.3, 168 A.3d 798, the other charges of unlawful sexual contact and unlawful sexual touching do require proof of intent.  17-A M.R.S. § 255-A(1)(E-1); 17-A M.R.S. § 260(1)(C).  As such, Marin's intent was of consequence for the jury to find Marin guilty of unlawful sexual contact and unlawful sexual touching, which constituted four of the eight counts charged.  *See* M.R. Evid. 401(b).  Therefore, Exhibit 9 was relevant under Rule 401.  *See Hassan*, 2013 ME 98, ¶ 21, 82 A.3d 86; *State v. Vrooman*, 2013 ME 69, ¶ 24, 71 A.3d 723; *see also State v. Parsons*, 2005 ME 69, ¶ 14, 874 A.2d 875 (holding that images of sexually explicit materials possessed by the defendant were relevant to demonstrate the defendant's intent in the physical contact that occurred between the defendant and his daughter, supporting the trial court's decision to decline to sever the sexual-abuse charges from the possession charges).

[¶19]  Additionally, because Exhibit 9 was used to prove Marin's motive and intent given Marin's grandfather-granddaughter-like relationship with the victim, it was not used as propensity evidence as prohibited by Rule 404(b).  As

such, the court did not err by declining to exclude Exhibit 9. *See Pratt*, 2015 ME 167, ¶ 24, 130 A.3d 381; *Vrooman*, 2013 ME 69, ¶ 24, 71 A.3d 723.

### 2. Rule 403

[¶20] We review the trial court's determination pursuant to Rule 403 for an abuse of discretion. *Williams*, 2024 ME 37, ¶ 28, 315 A.3d 714. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." M.R. Evid. 403.

[¶21] While Exhibit 9 may be prejudicial, as most evidence in a case of child sex abuse may be, the key is that it is not *unfairly* prejudicial. *See State v. Patton*, 2012 ME 101, ¶ 24, 50 A.3d 544. For the charges requiring intent, the admission of Exhibit 9 does not tip the scale to unfair prejudice any more than the victim's description of her grandfather-granddaughter-like relationship with Marin and the testimony of numerous instances of abuse.

[¶22] Moreover, the court provided clear instruction to the jury that the counts charging unlawful sexual touching and unlawful sexual contact required proof of intent.[4] As such, the court did not exceed the bounds of its discretion

---

[4] We also note that Marin did not request a limiting instruction to address this concern and "in the absence of a request to the court to provide a limiting instruction, 'we can assume that counsel

in admitting Exhibit 9 because the probative value of Marin's intent, motive, and relationship to the victim was not outweighed by the danger of unfair prejudice.

## B.     Evidence of Uncharged Conduct

[¶23]  Marin argues that the court erred by admitting testimony about uncharged conduct that occurred outside of Kennebec County and outside of Maine because the evidence was highly prejudicial and it likely confused the jury.

[¶24]   As a threshold matter, we consider whether Marin waived appellate review of this argument.  *See State v. Harding*, 2024 ME 67, ¶ 19, 322 A.3d 1175.  Marin did not respond to the State's motion in limine to admit evidence of uncharged conduct.  He also not only failed to object to the admission of the uncharged conduct at trial but specifically stated that he did not object.  Finally, he consented to the court's instruction that in order to find Marin guilty the jury must find that the *charged* conduct occurred in Kennebec County.[5]   Indeed, Marin did not request any instruction prohibiting the

---

concluded that a limiting instruction would have overemphasized the importance of the evidence and decided to forego the request for strategic reasons.'"  *State v. Roman*, 622 A.2d 96, 99 (Me. 1993) (quoting *State v. Rogers*, 389 A.2d 36, 38 (Me. 1978)).

[5]  The court repeated "the State must prove Mr. Marin engaged in [the conduct] in Kennebec County, Maine.  *Conduct occurring outside of Kennebec County, Maine, does not satisfy this element*" for all counts.  (Emphasis added.)

consideration of the uncharged conduct as propensity evidence and instead agreed with the court that such an instruction was not necessary and would only serve to confuse the jury. This amounts to an affirmative agreement with a court action—the admission of the testimony—which constitutes a waiver of appellate review of the court's action. *Id.* ¶ 21; *State v. Rega*, 2005 ME 5, ¶ 17, 863 A.2d 917. Because Marin's argument is waived, we do not review the alleged errors regarding the uncharged conduct.[6] *Rega*, 2005 ME 5, ¶ 17, 863 A.2d 917.

### III.  CONCLUSION

[¶25]  For the foregoing reasons, the court did not err or abuse its discretion in admitting Exhibit 9, and Marin's argument regarding the admission of evidence of uncharged conduct was waived. We therefore affirm the judgment.

---

[6] Even if Marin did not waive this argument, we note that the argument would not succeed under an obvious-error standard of review because Marin cannot demonstrate that an error occurred. *See Harding*, 2024 ME 67, ¶ 22 n.9, 322 A.3d 1175. Here, the court did not err because testimony of the uncharged acts was admissible to show Marin's intent and the relationship between Marin and the victim, and because the court gave sufficient limiting instructions to the jury to which Marin consented. *See Hunt*, 2023 ME 26, ¶¶ 50, 52-54, 293 A.3d 423

The entry is:

Judgment affirmed.

---

Jeremy Pratt, Esq. (orally), and Ellen Simmons, Esq., Pratt & Simmons, P.A., Camden, for appellant Kennth D. Marin

Maeghan Maloney, District Attorney, and Shannon Flaherty, Asst. Dist. Atty. (orally), Prosecutorial District IV, Augusta, for appellee State of Maine

Kennebec County Unified Criminal Docket docket number CR-2021-1403
FOR CLERK REFERENCE ONLY